This case is Oglesby v. The Department of Children and Family Services. For the appellant, Ms. Boyles. Mr. Boyles, excuse me. And for the appellee, Ms. Lebrecht. You may proceed. Good morning, Your Honors. May it please the Court. Scott Oglesby is not guilty of violating Section 3 of the Act. To this day, he has never been found guilty of violating the Abused and Neglected Child Reporting Act. He was found guilty of violating an administrative rule. And that rule was misapplied by the agency. And the text of that rule was voided by the Supreme Court in its Julie Q decision. We raised several procedural issues in our brief. And those procedural issues arise because the agency, DCFS, lost the transcript, the hearing transcript. The first issue was that the agency was required to file the transcript under Section 108B of the Administrative Review Law. And it did not because it lost it. Because it lost the transcript, the agency then filed a bystander's report in the trial court without following the proper procedure for obtaining leave to file that bystander's report. And then thirdly, we sought twice to amend our complaint in the trial court below. We were denied leave to amend both times. I've never encountered an experience where I've been denied leave to amend a complaint before. And it must be a rare situation where somebody is denied leave twice when it's not a situation where there has been a motion to dismiss granted or there's been a pleading defect that someone is trying to cure. Regarding the missing transcript, we argue that that's sufficient grounds to vacate under Section 111B of the Administrative Review Law. Again, Section 108B requires the entire record be filed with the court, and it was not. That the record is not here is not plaintiff's fault. It was the responsibility of the agency to file the record, and that did not occur. Again, we have argued that that's grounds to dismiss, or excuse me, to vacate the decision. If the court is of the opinion that that would be too harsh or too draconian, the agency really didn't leave the court much choice because the findings that it made, it did make some specific factual findings, but the findings that it made do not bear on the question of abuse. They question, they bear on extraneous details. The agency found that whatever the plaintiff did, that satisfied the standard of its Rule 1060, and that is not a finding of fact. That would be like pleading a legal conclusion in court, and calling it a legal conclusion is a stretch, we believe, because it's the incomplete legal standard. The Rule 1060 in this... Counsel, what finding of fact was missing here in support of your argument? Well, the agency never found that injury was likely, which is what the statute requires. And the agency never found that the injury that it found was likely would have resulted in death, disfigurement, loss or repair to bodily functions or impairment of emotional health. It found a risk of physical injury and stopped, which is just the beginning of the statutory definition, but far from the complete statutory definition. And again, it has never argued that it satisfied the statutory definition. With respect to the Rule that it did apply, 1060, there is a discussion in Coronca. I believe both parties cited that case. It's under Head Note 5, and in that discussion in Coronca, it explains that these types of rules, the rule that was relied upon by the agency, is a gatekeeping measure. It's designed to be used by the agency to determine whether or not to accept a report of abuse in the first place. And that's not how the Rule was applied here. It was applied as an alternative definition of abuse under the Act. I think the Court, actually what the Court said, this isn't verbatim, but they said that those rules list the specific harm which must be alleged before the DCFS will accept a report of abuse. That's under Head Note 5 in that opinion. Substantively, those are the procedural issues. Substantively, we believe there are three cases directly on point. Again, that's also unusual in my experience as an attorney. You don't normally find three cases on point. Briggs, Coronca, and Lyons. Coronca was the oldest of those cases. It was decided by this Court. It involved bruising on a junior high school student. The Court said that marks are not abuse because it did not cause death, disfigurement, etc. That case is still accurate. It's still good law. Briggs followed Coronca. Briggs involved a first grader. There's a second grader issue in this case. Briggs actually involved a first grader. And the first grader in Briggs, like the second grader in this case, had a behavioral disorder. There were marks on the student in Briggs. The Court said marks are not abuse. It must show how marks cause death, disfigurement, etc. It must show how the marks meet statutory definition. And that is still good law. Lyons is a case out of the 3rd District. That involved also a behavioral disorder student. The student was 10 years old. The 3rd District did not insist on the statutory definition. But it did explain that poor decision making, which is what occurred in this case, is not abuse. And Lyons was followed in, I think it's Schildbach-Senefro. I'm sure I'm butchering the name. The cite on that is 4 NE 3rd 532. The Attorney General cited that case in its reply brief. And it's from January 2014. It's a 1st District case. And the 1st District said, well, even if you want to apply the administrative rule, you cannot ignore the statutory definition. That is precisely what occurred in this case. Again, there's never been a finding that Scott Oglesby violated Section 3 of the Act. Neither of the briefs filed by the Attorney General argues that point. The first brief argues that the Act's definition need not be met. And their second brief is specific to the 1060 guideline. It's our opinion that if DCFS had applied the Act, then perhaps its decision might withstand administrative review. But because it did not, and because Scott Oglesby has never been found guilty of the Act, that the finding of abuse must be vacated. Thank you. Thank you. You'll have additional time in the rebuttal. Ms. LeBrecht. Good morning, Your Honors. Counsel. May it please the Court. First of all, I'd like to say that it is not true that we have never argued that he satisfied the statutory definition of abuse in this case. This case involved abuse because Mr. Oglesby got involved in a situation that he didn't know anything about. There was no need for his intervention because there were no other children to be protected. There were three adults in the room with the child. There were two adults outside the door. All of them had more training than he had in dealing with this sort of situation. And he wasn't even trying to help calm or contain the child. He thought they were too, by his own testimony, he thought they were being too soft or permissive. And he wanted to show that he could subdue the child where they were not. Did he? I'm sorry. Did he? Did he what? Did he subdue the child? Well, he did, I think, shock the child into a few moments of silence. But then as soon as he put the child down and the other people came back into the room, then the child started up again saying things. But even if he did successfully get the child to quiet down, which was part of what they were trying to do, that doesn't justify the way that he did it, is our argument. He unreasonably, he took unreasonable risks in grabbing a small child around the neck. Was the child injured? The child did not suffer devastating injury. That wasn't my question. Was the child injured? It's a yes or no question. The child may have been lightly injured. Temporary pain. There were no lasting bruises. So the child suffered temporary pain and fear. But this case is not about actual injuries. Not because we think that there were none, as I just said. It was temporary pain and fear, and it can't reasonably be doubted that the incident was traumatizing, because all the adults in the room found it so. The testimony indicates that they were shaking afterwards and that they were shocked and so forth. But the greater problem presented in this case is that his actions established a substantial risk of physical injury, likely to cause impairment of physical or emotional health. And the director in this case found that his acts were violent and intimidating, acts that caused excessive pain or fear within the meaning of the regulation, which satisfies the requirement that there be impairment of physical or emotional health under the statute. And we get to this by looking at a number of factors based on the regulations. It was clearly a violent, intimidating act because Oglesby was a stranger to the child, and the child couldn't predict his behavior or his motivations. He acted suddenly and forcefully without warning. The classroom teacher described him as barging in. He yelled at the child and appeared to more than one person to be angry and out of control. His action was designed to shock and intimidate, not calm or contain. What he did to the child is the sort of thing that the hero does to the bad guy on television, pick him up and show him who's boss. He also grabbed the child around the neck in a vulnerable area, pinned him up in the air, which would be destabilizing and anxiety-producing for anyone, let alone a small child. The child was only seven and small for his age, and he had a behavioral disorder, which may have limited his ability to comply with requests that he calm himself down immediately. The child was essentially abandoned by his protectors, because the school personnel deferred to him as a police officer. They wouldn't have allowed anyone else to approach this child and do the things that they allowed this police officer to do if he had not been a police officer. And the action was, as I've already suggested, wholly unnecessary to protect the child or anyone else. Now, the child did suffer trauma, but it could have been significantly worse. He could have dropped the child, especially if the child flailed or lashed out. He could easily have impaired the child's breathing. Remember that the child was already upset. Add to that the shock of what would be a sudden intervention and hoisting him up in the air, and then any pressure against the child's windpipe, and it's not difficult to see the danger. He could also have easily hurt or bruised the child in grasping him and pressing him against the wall. It's not hard to hurt a small child. Opposing counsel says that this case is on all fours with the cases Lyons, Briggs, and Karanka. But these cases are easily distinguishable because they were about cuts, welts, and bruises, and did not involve a finding of physical injury. Excuse me, speak up a bit. They were about what? Cuts, welts, and bruises, and not about a substantial risk of physical injury. I still didn't hear you. They were about what? Cuts, welts, and bruises. Okay, cuts, welts, and bruises. The allegation involving cuts, welts, and bruises, and not a substantial risk allegation. They were merely about whether excessive force was used in a single incident. I take these cases to hold that this is not enough. Even if there was a slight miscalculation of the force necessary to accomplish the legitimate aims, then it was not abuse in the absence of other factors warranting concern. But this case is different because there were other factors warranting concern. All the indicated persons in those cases knew the child and the situation, and the child knew them. They were teachers or parents, and they had specific training in dealing with children with behavioral disorders, or at least experience. Why were the police called? Well, the resource officer was called for another child. There was a larger seven-year-old child who was out of control, and the resource officer was called to deal with that. Officer Oglesby heard this on the radio, and he realized that he could get to the classroom faster than the resource officer, so he volunteered to come, and they allowed him to do so. That's how he became involved. He was never specifically invited, and no one was asked to intervene in the situation with the child that Oglesby allegedly abused. And another difference between Briggs, Lyons, and Karanka is that none of them sees the child suspended in the air, and the most important thing was the court found that the perpetrators in those cases were acting to keep that child or other children safe. And that is not at issue here. I also note that there is a principle that unifies both these three cases and two other cases involving tying in close confinement, which is the Chilvack and the Watt cases. And that is that all those cases, they found no abuse because the alleged perpetrator was taking reasonable actions to keep the child safe. This case is more like the Lehman case. The difference in that case is that that was the case involving the little girls that a foster father made hang from a pole in the basement to discipline them and made them run laps in the basement. The court found that there was no legitimate purpose, there was no safety purpose, and these were an entirely disproportionate response to the situation. And so that's why this case is different from Briggs, Lyons, and Karanka and the other cases. With respect to his gatekeeper argument, I want to say first that this is a new argument that he is raising for the first time in his reply brief. And the appellate court rejected a similar argument in the Doe case in 1994 because the purpose of the regulations is to help people at all stages of the case apply the broad standards of the statute to specific concrete situations. And so if you apply the regulations correctly, you will not find the allegations proven without satisfying the statute. And this is why, although the director's decision does mention the statute, it focuses mainly on the regulation. And that's because the purpose of the regulation is to guide the fact finder in applying the statute. And if you correctly do that, then you will find that it satisfies the statute. We are aware that the Schilbach-Sinifro case suggested something different. It suggested that satisfying the regulation alone was not enough and that you had to separately analyze whether the regulation was satisfied and then whether the statutory terms were satisfied. But there are two problems with this. One is it doesn't make sense to apply a complex multi-factor rule as a sort of gatekeeper rule. Sometimes we apply a simple rule in order to avoid having to engage in a more complex analysis of a number of cases. But we don't do it the other way around. That would mean that we're doing a lot of extra work for nothing if we're applying this complex test up front only to get to a very simple rule later. And the other problem with it is that if we apply the statute in terms different from the regulation, if we do our analysis in different terms, then the point of the regulations is lost because then we have no assistance in interpreting the broad standards of the statute. And there is no deference to the department's experience and expertise in this area. Are you saying Schilbach, therefore, is bad law? I'm saying it was mistaken on that ground, yes. If we think otherwise, do you lose? If you think that the statute must be applied separately? If we think that case is soundly decided, do you lose? Well, you would have to do more than just agree with that. You would also have to find that Mr. Ogilvie is correct in saying that it must be a devastating injury because... Devastating is the requirement he claims? Yes. The statute does not say devastating injury. But that is... How about an injury? What's the injury? Going back to Justice Appleton's question, I'm not sure... We have hurt feelings. Does that count? We're not dealing with just injury, though. We're dealing with a substantial risk of injury. We're dealing with, in other words, potential injury. So picking up this child presented a substantial risk of injury to the child? Yes. How? Because it's easy to hurt a small child in grasping them and picking them up. We're all parents here, counsel. We've all had the experience of picking up small children. What's the substantial risk of injury? And hoisting them up in the air around their neck when the child is having a fit and you don't know the child. It's easy to drop them. It's easy to do other things. What do you mean it's easy to drop them or do other things? If you have a small child that is pitching a fit and you're holding them up in the air around the neck and the child flails or hits you in the eye or something, it's easy to drop them or hurt them harder against the wall than you intended to. What we're saying, we don't think... We're not arguing that there's a substantial risk of death or permanent impairment resulting from this accident. We are saying that there's a substantial risk of causing that child pain and fear, which is unjustified when you consider that there's no need for it. That he shouldn't have been doing this in the first place because he wasn't trying to protect the child. Because he didn't know about the situation and for all those reasons. And when you look at the totality of the circumstances, then you have to say that this shouldn't have happened and to cause pain and fear without any need is abuse under the statute. Counsel, if we were to decide that Shell Bond was soundly decided, wouldn't that, in following that case, wouldn't that require us to find that the ALJ here specifically found that the child's physical or emotional health was impaired and that was not a finding that the ALJ made in this case? We believe that it was when he said that, when the ALJ said that these were violent, intimidating acts that caused excessive pain and fear. He could have elaborated that further, but we believe that that is, in essence, what he was saying. And he cited the correct proportion of the statute. He didn't draw the one-to-one correspondence that I'm drawing now, but we believe that it reasonably read that's what he did. There's nothing that suggests that the ALJ felt that he was entitled to diverge from the statute or that, for some reason, he was doing something that took him out of the way that the department usually interprets the regulations, which is to fulfill the statutory intent. And there is another problem with the Schilbach case and it's finding about causation. They suggested that the department needed to come up with evidence to prove the risks that they were talking about to the children. But we think that if you take a baby birth and hang him out the window, it's not necessary to calculate precisely the trajectory on which that child will fall or what part of him will strike the ground first. So that's the equivalent in this case? To say that we have to come up with some kind of evidence to show that the child is likely to be injured, that we have to come up with statistical evidence or expert testimony, that would be the equivalent in reasonableness. It would be no more reasonable to require that kind of evidence than it would be in a case like that. Or to require a statistician to come in and testify about the probability, given a certain amount of muscle strength and a grip on the child in a certain place, the likelihood that you will drop them. Because when you look at the risks in that situation, the risks to the child outweigh and there would be no reason to hang the child out the window. So it would be easy for this court to say that that is unreasonable. And we are arguing that that's what the court should do in this case. It's not quite as, this situation is not quite as flagrant of an example as that one. But we think it is an outrageous example. And it was entirely unjustified. Which makes the pain and fear that the child suffered and the potentially greater pain and fear he could have suffered, something that the act protects, covers. I'd like to say quickly that in response to his argument that he wasn't an eligible perpetrator because he wasn't in continuous contact with the child, it is absurd to think that he's entitled to one free whack as long as he's not likely to see the child again. And although the department's, the language of the regulation doesn't echo all of the language of the statute's definition of abused child, the agency properly looked at the term in the statute, the person responsible for the child's welfare, and to do otherwise would exclude a lot of people who do have continued contact with the child, like teachers and daycare providers. If the court has no further questions, I say thank you, Your Honors. And we ask that this court uphold the department's decision denying Ogilvie's request for expungement of the indicated finding of abuse. Thank you. Thank you, Your Honor. I'll try to do this quickly. I believe I just heard counsel argue twice, or at least admit twice, that the agency did not follow the statutory definition, and specifically, as we talked about earlier, the statute requires, creates a substantial risk of physical injury to such a child, this is where we believe the agency stopped, but the statute keeps going, by other than accidental means, which would be likely to cause death, disfigurement, impairment of physical or emotional health or loss, or impairment of any bodily function. And I think twice counsel admitted that the agency didn't apply that definition. So, more general terms, the DCFS is asking the court to not follow the statute and not follow the case law. Again, please don't take my word for what the purpose of this gatekeeping argument, please don't take my word for it. It's in Karanka, it's under Head Note 5, I believe it's towards the end of that paragraph. The regulation is not, this regulation is not intended to be used to replace the definition of abuse under the Act, and that's in the Karanka case. And then thirdly, just because I think it should be corrected, or at least pointed out that it's not part of the record, for the term whack, and we've heard grab the child around the neck in a vulnerable area, those are not the findings of the agency, and that's not properly before the court. There's no questions. I don't see any. Thank you. We'll stay in the recess until the readiness of the next case.